<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DOWNS FORD, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:20-cv-08595-BRM-ZNQ |
| | : | |
| ZURICH AMERICAN INSURANCE COMPANY, ABC CORPS. 1-5 (fictitious Names whose identities are currently unknown) | : | |
| | : | OPINION |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Zurich American Insurance Company ("Zurich") seeking to dismiss Plaintiff Downs Ford, Inc.'s ("Downs Ford") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4.) Downs Ford opposed the Motion. (ECF No. 10.) Zurich filed a Reply. (ECF No. 13.) Zurich filed Notices of Supplemental Authorities. (ECF Nos. 14, 15.) Downs Ford responded to Zurich's Notices of Supplemental Authorities. (ECF No. 16.) Zurich filed Notices of Supplemental Authorities. (ECF Nos. 17, 18.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Zurich's Motion to Dismiss is **GRANTED.**

**I.     BACKGROUND**

This is one of a series of decisions involving an insurance company declining coverage for an insured's claim that stems from the government shutdown orders issued in response to the

COVID-19 pandemic. The insured claims business losses as a result of the shutdown orders, and the insurance carrier invokes certain exclusion provisions in the insurance policy to decline coverage for such losses.

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Downs Ford owns an automobile dealership located on State Highway 37 in Toms River, New Jersey, which sells new, pre-owned and demo vehicles to the general public. (ECF No. 4-2 ¶¶ 1–2.) Zurich is an insurance company with a principal place of business located at 1299 Zurich Way, Schaumburg, Illinois, and owns subsidiaries that issue commercial business property insurance. (*Id.* ¶¶ 3–4.) Zurich issued Policy No. ADM 4447432-01 (the "Policy") to Downs Ford, which provides coverage for losses, including business income losses, at Downs Ford's dealership for the period of September 1, 2019 to September 1, 2020. (*Id.* ¶¶ 14–15.)

The Policy provides the following: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (ECF No. 4-3 at 63, § A.) The property covered under the Policy includes Downs Ford's dealership buildings, showrooms and premises located at 360 Highway 37 East, Toms River, New Jersey (the "Insured Premises"). (ECF No. 4-2 ¶ 19.) "Covered Causes of Loss means direct physical loss unless excluded or limited in this policy." (ECF No. 4-3 at 91, § A.) In particular, the Policy provides for "Civil Authority" coverage:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 80, § 5.a.) Also, the Policy contains an Exclusion of Loss Due to Virus or Bacteria Endorsement (the "Virus Exclusion"):

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

(*Id.* at 90.)

On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak constituted a public health emergency of international concern. (ECF No. 4-2 ¶¶ 6–7.) Without any available vaccine to protect against COVID-19 or known cure, governmental authorities throughout the world attempted an effective means of controlling the COVID-19 pandemic by relying on measures designed to reduce human to human contact and also limit human exposure to contaminated objects or surfaces. (*Id.* ¶ 8.) To that end, on March 9, 2020, New

Jersey Governor Phil Murphy declared a state of emergency and a public health emergency, and issued Executive Order No. 103 (2020) "to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19." (*Id.* ¶ 10.) On March 21, 2020, Governor Murphy issued Executive Order No. 107 (2020), which required the brick-and-mortar premises of non-essential retail businesses, including Downs Ford, to close to the public. (*Id.* ¶ 11.) Since the issuance of the Executive Order Nos. 103 and 107 (the "Executive Orders"), Downs Ford has been unable to operate its dealership in the normal course of business. (*Id.* ¶ 12.) As a result, Downs Ford suffered business income interruption losses, due to the loss of customers, patrons, vendors, suppliers, supplies and other essential physical materials necessary to operate its business. (*Id.* ¶ 26.) Downs Ford submitted a claim under the Policy for such losses, which was assigned Claim No. 5630051395 (the "Subject Claim") by Zurich. (*Id.*) On May 26, 2020, Zurich denied the Subject Claim, citing the Virus Exclusion. (*Id.* ¶ 27.)

On May 27, 2020, Downs Ford filed a Complaint against Zurich in the Superior Court of New Jersey, Law Division. (ECF No. 4-2.) On July 10, 2020, Zurich removed the case to the United States District Court for the District of New Jersey. (ECF No. 1.) Downs Ford seeks: a declaration that the business income loss suffered by Downs Ford as a result of the Executive Orders is covered under the Civil Authority coverage (Count One), a declaration that Virus Exclusion is against the public policy of the State of New Jersey and not otherwise applicable to any of the business income interruption loss suffered by Downs Ford as a result of the COVID-19 pandemic (Count Two), an award for Downs Ford of all costs and reasonable attorney's fees (Count Three), and other equitable relief as the Court deems just and proper (Count Four). (*Id.* ¶ 40.) On July 17, 2020, Zurich filed a Motion to Dismiss Downs Ford's Complaint. (ECF No. 4.) On August 25, 2020, Downs Ford filed an Opposition to the Motion to Dismiss. (ECF No. 10.) On

September 1, 2020, Zurich filed a Reply to the Opposition to the Motion to Dismiss. (ECF No. 13.) On October 2, 2020, Zurich filed a Notice of Supplemental Authorities. (ECF No. 14.) On November 11, 2020, Zurich filed another Notice of Supplemental Authorities. (ECF No. 15.) On November 13, 2020, Downs Ford responded to Zurich's Notices of Supplemental Authorities. (ECF No. 16.) In January and February 2021, Zurich filed Notices of Supplemental Authorities, which the Court has considered. (ECF Nos. 17, 18.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

5

liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

**III.   DECISION**

6

      **A.     The Civil Authority Coverage Does Not Cover Downs Ford's Losses**

Downs Ford contends the issuance of the Executive Orders triggers the Civil Authority coverage. (ECF No. 10 at 17.) Zurich opposes, stating the coverage is triggered by an action of civil authority only when a Covered Cause of Loss causes damage to property away from the Insured Premises. (ECF No. 13 at 12.) Zurich claims, without a Covered Cause of Loss to which the civil authority is responding, there simply is no coverage. (*Id.* at 13.) The Court agrees.

The Civil Authority provision is triggered "[w]hen a Covered Cause of Loss causes damage to property other than" and within one mile of the Insured Premises. (ECF No. 4-3 at 80, § 5.a.) Here, Downs Ford alleges "damage" to "the property of neighboring and adjacent commercial buildings, offices and retail establishments because they have been unable to use their property for its intended purpose as a result of" the Executive Orders. (ECF No. 4-2 at ¶ 25.) Assuming the alleged damages occurred within one mile of the Insured Premises, the Court discerns no Covered Cause of Loss that causes the alleged damage. First, COVID-19 could not be a Covered Cause of Loss because of the Virus Exclusion. Second, an action of civil authority, like the Executive Orders, is not a Covered Cause of Loss. The Civil Authority provision states an action of civil authority is taken "as a result of the damage" to a property other than Insured Premises caused by a Covered Cause of Loss. (*Id.*) In other words, for the Civil Authority provision to apply, a Covered Cause of Loss must have resulted in an action of civil authority like the Executive Orders. However, the Executive Orders "were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion," and are therefore not a Covered Cause of Loss and unable to trigger the Civil Authority coverage. *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, No. 20-cv-04434 JSC, 2020 U.S. Dist. LEXIS 174010, at *2–3 (N.D. Cal. Sept. 22, 2020) (rejecting the plaintiff's argument that "[t]he Covered Cause of Loss . . . is the Closure Orders"); *see also Newchops Rest.*

*Comcast LLC v. Admiral Indem. Co.*, Nos. 20-1949, 20-1869, 2020 U.S. Dist. LEXIS 238254, at *8 (E.D. Pa. Dec. 17, 2020) ("The civil authority provision applies only when another's property is damaged by a covered cause of loss. As alleged in the amended complaints, the virus contaminated other properties which caused the civil authorities to issue the orders. If so, the cause of the insureds' losses was the virus, which is specifically excluded as a covered cause of loss. Even if the shutdown orders were the cause, they are similarly excluded from the definition of covered cause of loss."). Accordingly, Downs Ford fails to state a plausible claim for relief to survive a Rule 12(b)(6) challenge on Count One.

      **B.**      **The Virus Exclusion Unambiguously Denies the Subject Claim**

           **1.**      **Actual Presence of Viruses at Insured Premises Is Not Required to Trigger the Virus Exclusion**

Downs Ford claims the Virus Exclusion is ambiguous, because it can be reasonably interpreted by an insured to mean the Policy only excludes coverage for any losses caused by a virus (or bacterium or other microorganism) that is present at the Insured Premises or otherwise has infected the insured's employees or staff. (ECF No. 10 at 12.) Downs Ford bases its interpretation on two arguments. (*Id.* at 12–13.) First, business owners know they normally do not obtain insurance coverage for losses due to their employees' contracting a virus, as opposed to governmental orders in response to a virus pandemic, for which the Virus Exclusion gives no notice. (*Id.*) Second, since the Virus Exclusion applies when a virus that induces or is capable of inducing physical distress, illness or disease, the subject virus must be physically present at the Insured Premises. (*Id.* at 13.) Zurich states Downs Ford has provided no valid argument in support of such an interpretation. (ECF No. 13 at 17.) The Court agrees.

Insurance policy exclusions must be narrowly construed, and the burden is on the insurer to show the claim falls within the exclusion. *Colliers Lanard & Axilbund v. Lloyds of London*, 458

F.3d 231, 236 (3d Cir. 2006); *Feszchak v. Pawtucket Mut. Ins. Co.*, No. 06-0076, 2008 U.S. Dist. LEXIS 29295, at *7 (D.N.J. April 8, 2008); *Gibson v. Callaghan*, 730 A.2d 1278, 1283 (N.J. 1999); *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998). However, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citing *Longobardi v. Chubb Ins. Co.*, 582 A.2d 1257, 1260 (N.J. 1990)).

The Court finds no basis to adopt Downs Ford's proposed interpretation. First, the plain language of the Virus Exclusion does not require a virus be present at the Insured Premises or having infected the insured's employees. Had Zurich meant to impose such a requirement, it could have been easily added to the Virus Exclusion, like the exclusions concerning fungus and silica in the Policy. Instead, the Virus Exclusion explicitly opts out its application to losses resulting from "'fungus', wet rot or dry rot," which is "addressed in a separate exclusion." (ECF No. 4-3 at 90, § B.) The separate exclusion for fungus excludes insurance coverage for loss or damage caused by the "presence" of fungus, wet or dry rot or bacteria. (*Id.* at 93, § B.1.h.) Similarly, the exclusion for silica or silica-related dust precludes coverage for personal and advertising injury arising out of "contact with, exposure to, existence of, or presence of" silica or silica-related dust. (*Id.* at 179, § II.B.a.) Because the Virus Exclusion "bears no such limitation," an interpretation that "the exclusion does not apply unless Covid-19 is present at the [insured premise]" fails. *Hajer v. Ohio Sec. Ins. Co.,* No. 6:20-cv-00283, 2020 U.S. Dist. LEXIS 229317, at *5 (E.D. Tex. Dec. 7, 2020); *see also Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 U.S. Dist. LEXIS 147276, at *3, 6 (W.D. Tex. April 1, 2016) (concluding a virus exclusion clause that applies only when a virus "induces or is capable of inducing physical distress, illness or disease" is

9

triggered, though "COVID-19 was not present" at the insured premise). Second, the business owners' alleged knowledge of the scope of a virus exclusion provision is not a basis for a departure from the clear language of the Virus Exclusion. At best, such knowledge constitutes a trade practice or custom, which cannot override an unambiguous contract provision or be invoked to create an ambiguity. *See Villamil v. Sentinel Ins. Co.*, 356 F. Supp. 3d 418, 423 (D.N.J. 2018) (citing *Chubb Custom Ins. Co. v. Prudential Ins. Co.*, 948 A.2d 1285, 1289 (N.J. 2008)) ("[W]here the language of the contract is clear, extrinsic evidence may not be considered."); *Sterrett v. Giant Eagle, Inc.*, 681 F. App'x 145, 150 (3d Cir. 2017) ("Even were such behavior a 'course of performance' . . . [the court] would still follow the clear text of the [agreement]."); *Keegan v. Steamfitters Local Union No. 420 Pension Plan*, 67 F. App'x 744, 750 (3d Cir. 2003) (citing *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 753 (Fed. Cir. 1999)) ("[E]vidence of trade practice and custom does not trump other canons of contract interpretation."). Therefore, the Court rejects Downs Ford's interpretation that the virus must be present at the Insured Premises or infect Downs Ford's employees in order to trigger the Virus Exclusion.

### 2. There Is No Ambiguity as to Causation

Downs Ford argues the phrases "caused by" and "resulting from" in the Virus Exclusion are undefined and ambiguous, and should be narrowly construed. (ECF No. 10 at 13.) Downs Ford maintains the Policy fails to clarify whether the Virus Exclusion applies when a virus is only a concurrent or sequential cause of an insured's losses. (*Id.* at 19–20.) Downs Ford claims COVID-19 is the initial cause triggering a sequence of events, the last of which, i.e., the Executive Orders, directly caused Downs Ford's business losses and triggered the Civil Authority coverage. (*Id.* at 17.) Downs Ford suggests, under a narrow construction regarding causation, since COVID-19 is only a concurrent or sequential cause, the Virus Exclusion does not apply, and there is a valid basis

for the Subject Claim under the Civil Authority coverage. (*Id.* at 17–18.) Zurich counters there is nothing ambiguous about the Virus Exclusion, whose plain language states a loss caused by or resulting from any virus is excluded from coverage in all coverage parts of the Policy. (ECF No. 13 at 11.) Zurich insists the Virus Exclusion prevents the Civil Authority coverage from being triggered. (*Id.* at 15.) The Court agrees.

"Ambiguity in a contract is a question of law." *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 400 (3d Cir. 2006). A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. General Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). "For an ambiguity to exist, it must be apparent on the face of the agreement by apparently referencing two or more things at the same time." *Bayer Chems. Corp.*, 171 F. App'x at 400. "An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000). "While courts 'should not ignore an exclusion's clear meaning, if there is another fair interpretation, the court must construe the insurance policy in favor of coverage' . . . However, 'this does not mean . . . that any far-fetched interpretation of a policy will be sufficient to create an ambiguity requiring coverage.'" *Boddy v. Cigna Prop. & Cas. Co.*, 760 A.2d 823, 828 (N.J. Super. Ct. App. Div. 2000) (citing *Cobra Products v. Federal Ins. Co.*, 722 A.2d 545, 549 (N.J. Super. Ct. App. Div. 1998)).

Here, the alleged ambiguity in "caused by" and "resulting from" involves the nature and scope of the causal relationship the two phrases entail. If the language of an insurance exclusion "requires a causal link, courts must consider its nature and extent because evaluating that link will determine the meaning and application of the exclusion." *Flomerfelt v. Cardiello*, 997 A.2d 991,

997 (N.J. 2010). "[W]hen an insurance policy uses an exclusion which bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss.'" *Um v. Cumberland Ins. Group*, No. A-0625-06T2, 2008 N.J. Super. Unpub. LEXIS 2800, at *5 (N.J. Super. Ct. App. Div. March 13, 2008) (citing *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)). "Thus, an insured is normally afforded coverage where an 'included cause of loss is either the first or last step in the chain of causation which leads to the loss.'" *Id.* (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 353 (D.N.J. 1999)); *see also Public Serv. Enter. Grp., Inc. v. Ace Am. Ins. Co.*, No. ESX-L-4951-13, 2015 N.J. Super. Unpub. LEXIS 620, at *7 (N.J. Super. Ct. Law Div. March 23, 2015) (citing *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004)) ("[A] restriction in an insurance policy does not apply if either the first or the last cause of the loss is not subject to the restriction."). "The efficient proximate cause doctrine, more commonly referred to as Appleman's Rule, applies to risks and exclusions where a non-covered peril is set in motion by a covered peril in a chain of causation . . . . In other words . . . recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk." *Estate of Doerfler v. Federal Ins. Co.*, Nos. A-4215-18T1, A-4217-18T1, 2020 N.J. Super. Unpub. LEXIS 920, at *3 (N.J. Super. Ct. App. Div. May 14, 2020) (citations omitted).

However, an anti-concurrent or anti-sequential clause "preempts such background interpretation principles as the 'efficient proximate cause' doctrine, which by their terms apply only absent contrary policy language." *Lam Inv. Research, LLC v. Public Serv. Mut. Ins. Co.*, No. 12-5576, 2016 U.S. Dist. LEXIS 45116, at *5 (D.N.J. April 1, 2016). "An anti-concurrent

12

causation or anti-sequential causation clause will 'exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured.'" *New Jersey Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (citing *Simonetti v. Selective Ins.*, 859 A.2d 694, 700 (N.J. Super. Ct. App. Div. 2004)); *see also Lam Inv.*, 2016 U.S. Dist. LEXIS 45116, at *5 (citations omitted) (concluding the anti-concurrent/anti-sequential language will deny recovery when "one of the undisputed causes of loss was the subject of an exclusion").

Here, the usage of phrases "caused by" and "resulting from" does not create an ambiguity. The reasoning that the phrases such as "on account of," "because of," and "caused by an occurrence" "are ambiguous because the phrases could connote one of several types of causation disregards the plain meaning of the phrases and is not a ground for finding an ambiguity." *Carlin v. Cornell, Hegarty & Koch*, No. A-1984-09T3, 2011 N.J. Super. Unpub. LEXIS 2155, at *9 (N.J. Super. Ct. App. Div. Aug. 11, 2011). Unlike several other exclusions in the Policy that are qualified by an anti-concurrent/sequential cause language[1], the Virus Exclusion is without such language. As a result, Appleman's Rule applies, and there is no ambiguity as to causation. *See Nat'l Mfg. Co. v. Citizens Ins. Co. of Am.*, No. 13-314, 2016 U.S. Dist. LEXIS 180145, at *22 n.8 (D.N.J. Dec. 30, 2016) (applying Appleman's Rule to the three exclusions that "do not contain anti-concurrent or anti-sequential language, although that language does appear in" another exclusion).

That is to say, the Subject Claim is viable if a Covered Cause of Loss starts or ends the sequence of events leading to Downs Ford's alleged losses. But this is not the case here. The first cause, i.e., COVID-19, is not a Covered Cause of Loss because of the Virus Exclusion. (*Id.*) The

---

[1] *See, e.g.,* "We will not pay for loss caused by or resulting from any of the following. Such loss is excluded *regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*" (ECF No. 4-3 at 26, 91, 156, 158.)

last cause, i.e., the Executive Orders, as previously discussed, is not a Covered Cause of Loss either. Therefore, the Virus Exclusion bars the Subject Claim.

### 3. Downs Ford's Reasonable Expectation Lacks Factual Basis

Downs Ford argues there is a question of fact as to whether it had a reasonable expectation that the Virus Exclusion only excludes coverage if the loss was caused by a virus actually present at the Insured Premises, as opposed to a governor's emergency orders issued in response a public health crisis. (ECF No. 10 at 22.) Zurich counters Downs Ford has provided no valid argument that its claimed expectation of the scope of the Virus Exclusion is objectively reasonable. (ECF No. 13 at 17.) The Court agrees.

"Insurance policies are contracts of adhesion and as such, are subject to special rules of interpretation." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) (citing *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999)). "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id.* (citing *Gibson*, 730 A.2d at 1283). This is known as the doctrine of reasonable expectations. *Id.* at 1265. Such expectations of insurance coverage must be real and objectively reasonable. *Abboud v. Nat'l Union Fire Ins. Co.*, 163 A.3d 353, 359 (N.J. Super. Ct. App. Div. 2017). "[W]here insurance policy's provision is not ambiguous or otherwise misleading, courts need not consider 'objectively reasonable expectation' of average policyholder in interpreting the policy." *Cypress Point Condo. Ass'n v. Adria Towers, L.L.C.*, 143 A.3d 273, 290 (N.J. 2016) (citing *Di Orio v. New Jersey Mfrs. Ins. Co.*, 398 A.2d 1274, 1280 (N.J. 1979)); *see also Abboud*, 163 A.3d at 359 (citing *Zacarias*, 730 A.2d at 1268) ("Courts may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing

subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'"); *State v. Signo Trading Intern., Inc.*, 612 A.2d 932, 938 (N.J. 1992) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)) ("[C]ourts should resort to the doctrine of reasonable expectations only when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'"). Only "in exceptional circumstances" may a court "permit an insured's reasonable expectation to overcome the plain meaning of a policy." *Abboud*, 163 A.3d at 358 (citations omitted); *see also Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (finding the doctrine of reasonable expectations, "while often stated, has rarely been applied by the New Jersey Supreme Court").

As previously discussed, the language of the Virus Exclusion is not ambiguous. Therefore, the Court need not consider Downs Ford's claimed reasonable expectations regarding the Virus Exclusion. Even assuming an exceptional circumstance exists and requires an examination of Downs Ford's claimed reasonable expectation, it does not change the Court's interpretation of the Virus Exclusion.

In general, "the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." *Bensalem Tp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994). Nevertheless, a court must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir. 1999) (citations omitted). "In assessing whether the expectations are objectively reasonable, a court will consider communications regarding the coverage between the insured or its broker and the insurer or its agent that relate to the insured's expectations." *Abboud*, 163 A.3d at 359; *see also Medical Protective*, 198 F.3d at 106 (considering the insured's application for insurance coverage in determining the insured's

15

expectation); *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 171 (3d Cir. 2007) (considering the letters between the insured and the insurer in determining the insured's expectation). A court "must also consider whether the scope of coverage is so narrow that it 'would largely nullify the insurance' and defeat the purpose for which it was obtained," or whether such "unrealistically narrow coverage" would "cause 'broad injury to the public at large.'" *Abboud*, 163 A.3d at 359 (citations omitted).

Notwithstanding the clear language of the Virus Exclusion, the Court finds Downs Ford alleges no factual basis for its claimed reasonable expectations. First, the Court discerns no alleged communications between the parties regarding the scope of the Policy in favor of Downs Ford. Downs Ford suggests Zurich possibly gave no prior notice that any claims for Downs Ford's business interruption losses arising under the Policy, even if covered under the Civil Authority provision, would be excluded under the Virus Exclusion. (ECF No. 10 at 22.) However, this alleged inaction of Zurich is not a communication between the parties. Second, Downs Ford does not make a showing that the Policy's scope is so narrow as to nullify the insurance or, as discussed in the following, violate public policy. Moreover, other New Jersey courts have recently enforced a same or similar virus exclusion in an insurance policy because of the COVID-19 pandemic. *See, e.g., Blvd. Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20-11771, 2020 U.S. Dist. LEXIS 234659, at *3 (D.N.J. Dec. 14, 2020); *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 N.J. Super. Unpub. LEXIS 2244, at *21 (N.J. Super. Ct. Law Div. Nov. 5, 2020); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, No. 20-05289, 2020 U.S. Dist. LEXIS 206972, at *5 (D.N.J. Nov. 5, 2020). Therefore, the Court finds no basis to rule in favor of Downs Ford because of its claimed reasonable expectation.

    **4.**  **Public Policy Is Not a Basis to Invalidate the Virus Exclusion**

Downs Ford maintains there are genuine issues of fact that warrant discovery as to whether Zurich's denial of coverage based upon the Virus Exclusion may violate the public policy of New Jersey. (ECF No. 10 at 23.) Downs Ford points out, on March 16, 2020, the New Jersey Legislature proposed Assembly Bill 3844, which seeks to force insurers to pay COVID-19 business interruption claims notwithstanding any "Virus or Bacteria" exclusion contained in the policies they have issued. (*Id.* at 24.) The Bill was put on hold on or about March 19, 2020, in order to allow legislators and insurers to weigh in on the Bill's provisions and impact. (*Id.* at 25.) Downs Ford asks this Court not to make a ruling, as a matter of law, as to whether the Virus Exclusion is in violation of New Jersey's public policy that is currently still evolving. (*Id.*) Zurich counters Downs Ford can point to no actual public policy preventing this Court from enforcing the Policy as written. (ECF No. 13 at 18.) The Court agrees.

Whether public policy invalidates a contract is a question of law. *Dong Ho Lee v. Eun Kyung Park*, No. A-2273-12T2, 2015 N.J. Super. Unpub. LEXIS 1233, at *7 (N.J. Super. Ct. App. Div. May 27, 2015); *Newport Capital Group, LLC v. Loehwing*, No. 11-2755, 2013 U.S. Dist. LEXIS 44479, at *5 (D.N.J. March 28, 2013). In an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citing *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)). In New Jersey, a court may invalidate an insurance exclusion for violating the state's public policy, without finding the exclusion ambiguous. *See Scott v. Salerno*, 688 A.2d 614, 618 (N.J. Super. Ct. App. Div. 1997); *Harleysville Ins. Co. v. Crum & Forster Personal Ins.*, 588 A.2d 385, 388 (N.J. Super. Ct. App. Div. 1990). "Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations, and decisions; the common law and specific judicial decisions;

and in certain cases, professional codes of ethics." *Macdougall v. Weichert*, 677 A.2d 162, 167 (N.J. 1996) (citations omitted). However, a statute whose scope is "uncertain, unsettled, and not definitively construed" cannot establish a public policy. *Simpson v. APA Transp. Corp.*, No. 81-2327, 1981 U.S. Dist. LEXIS 16141, at *5 (D.N.J. Oct. 20, 1981). A pending bill cannot show the existence of a public policy. *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 624 (3d Cir. 1992) (declining to find "a clear mandate of public policy" based on "the bills" that "were still pending").

Here, the Court is not in a position to speculate how the state legislature would proceed with Assembly Bill 3844. Therefore, Downs Ford has not alleged a New Jersey public policy that may invalidate the Virus Exclusion.

Since the language of the Virus Exclusion is clear, and should not be overridden by Downs Ford's claimed reasonable expectation or public policy, Count Two cannot withstand a Rule 12(b)(6) challenge. Because the two substantive counts (Count One and Count Two) are dismissed, Count Three and Count Four, which only request remedies for the substantive wrongs alleged in Count One and Count Two, must also be dismissed. *Marrin v. Capital Health Sys.*, No. 14-2558, 2015 U.S. Dist. LEXIS 10243, at *10 (D.N.J. Jan. 29, 2015) (dismissing two counts that request reliefs in the form of punitive damages, attorney fees, and litigation expenses because they "are remedies for certain causes of action, and not substantive counts in their own rights"); *Arruda & Beaudoin v. Astrue*, No. 11-10254-GAO, 2013 U.S. Dist. LEXIS 47166, at *1 (D. Mass. March 27, 2013) ("Since . . . the substantive counts will be dismissed, there is no reason not to dismiss the related remedial counts as well."); *Home Health Licensing Specialists Inc. v. Leavitt*, No. 3:07-CV-2150-B, 2008 U.S. Dist. LEXIS 90814, at *11 (N.D. Tex. Nov. 7, 2008) ("Counts Five and Six are requests for the remedies of a preliminary and a permanent injunction which, considering

that all of the substantive counts have been dismissed, cannot stand independently and are therefore dismissed.").

**IV.   CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** on all counts**.** An appropriate order will follow.


**Date: March 25, 2021**                                          */s/ Brian R. Martinotti*
                                                                               **HON. BRIAN R. MARTINOTTI**
                                                                               **UNITED STATES DISTRICT JUDGE**